IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| ROBERT FEIGHT, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. 21-1208-KGG |
| ) | |
| FARM BUREAU PROPERTY & ) | |
| CASUALTY INSURANCE COMPANY, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**MEMORANDUM & ORDER DENYING**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**

Now before the Court is Defendant's Motion for Partial Summary Judgment wherein Defendant asks the Court to grant summary judgment in favor of Defendant as to the issue of whether Plaintiff can claim increased expenses as a category of damages. (*See generally* Docs. 52, 53.) For the reasons set forth below, the Court finds that calculating Plaintiff's damages requires a determination of fact for the jury and, thus, Defendant's motion is **DENIED**.

**FACTUAL BACKGROUND**

**I.    Introduction.**

Plaintiff brings this underinsured lawsuit against his automobile insurance carrier. This lawsuit stems from an open-intersection automobile collision at a rural intersection in Cloud County, Kansas, in which underinsured motorist, Kevin Wurm, collided with the vehicle driven by Plaintiff, resulting in injuries to

1

Plaintiff.  (*See generally* Doc. 1.)  Liability insurance limits were paid by Mr. Wurm's insurance company.  In this lawsuit, Plaintiff alleges Defendant Farm Bureau has breached the Underinsurance provisions of the relevant policy.  (*Id*.)

The issue before the Court relates to a category of Plaintiff's claimed damages resulting from his alleged injury.  Defendant has filed a Motion for Partial Summary Judgment as to Plaintiff's claims for past and future economic damages.  (*See* Docs. 52, 53.)  Defendant argues that Plaintiff can recover only lost profits resulting from the accident – not a separate category of business expenses that, according to Defendant, has no connection to the profitability of Plaintiff's business.  (*Id*., at 12-13.)  Defendant contends that

> Plaintiff does not claim his income has decreased as a result of this accident.  He only claims that a component of his farm expenses has increased.  The uncontroverted facts show that Plaintiff has not incurred substitute labor costs since 2021 and that Plaintiff's overall income has not decreased after this accident as a result of the alleged increased labor costs.

(Doc. 53, at 2, 13-14.)

Plaintiff counters that he has paid and/or agreed to pay others for labor that he was able to do himself before sustaining injuries in the accident.  According to Plaintiff, these amounts "are the best estimate of the monetary value of his diminished earning capacity."  (Doc. 55, at 3.)   Plaintiff continues that a determination of the appropriateness of this damage estimate "is a material fact

2

issue to be determined by the jury, based largely on the credibility of testimony and evidence presented at trial." (*Id*.) He argues that this method of computation has a reasonable basis, enabling the jury to arrive at an estimate of the amount of loss. (Doc. 55, 8-10.) Defendant replies that Plaintiff's recovery can only be based on the reasonable sum of his lost profits, not a separate category of expenses that have not resulted in a decrease of his net profits. (Doc. 56, at 12-13.)

Within this context, the Court will summarize the relevant uncontested facts. For purposes of a summary judgment Order, the Court will "construe the factual record and reasonable inferences therefrom in the light most favorable to the nonmovant." **Janny v. Gamez**, 8 F.4th 883, 899 (10th Cir. 2021) (citation omitted). That stated, the party opposing summary judgment cannot create a genuine issue of material factual by making purely conclusory allegations, *id*., or allegations that are unsupported by the record as a whole, **Scott v. Harris**, 550 U.S. 372, 380 (2007). *See also* **Heard v. Dulayev**, 29 F.4th 1195, 1202 (10th Cir. 2022).

## II.  Uncontroverted Facts.

Plaintiff is "not making a lost wages claim," but instead claims substitute labor expenses consisting of compensation paid to others for work Plaintiff would have performed himself had he not been injured. In the 7 years before this accident Plaintiff did not have any hired help or hired hands. Up to the time of the

3

subject accident on June 8, 2020, Plaintiff had his own farming operation and also worked on his father's farm. At times before the accident, Plaintiff and his father had a revenue and cost sharing agreement for certain properties and also farmed based on a proportionate share of costs and incomes.

Since sustaining injuries in the accident, Plaintiff has needed assistance performing the farm and ranch work he performed himself prior to the accident. Plaintiff's treating neuro-ophthalmologist, Dr. Riggins, opined that there are techniques and/or a combination of surgeries that potentially could correct or alleviate Plaintiff's complaints of double vision, although this would not correct his issues with depth perception.[1]

Plaintiff's father died on June 10, 2021. From June 9, 2020, to December 31, 2020, Plaintiff paid his father $39,375.03 for substitute labor expenses. Defendant is not seeking summary judgment as to this amount.

Plaintiff's brother, Bryan Feight, has been helping Plaintiff with farming and ranching work. Prior to this accident, Plaintiff and Bryan Feight were not engaged in any combination of farming operations together.

Plaintiff describes his economic loss in this suit as constituting money that

> was paid to my father for his labor since I couldn't do the work myself. My father has since passed and now my

---

[1] Facts in this paragraph were gleaned from Plaintiff's response brief and Defendant's reply thereto; where Defendant has attempted to controvert the same, facts are taken in the light most favorable to Plaintiff. *Janny*, 8 F.4th at 899 (citation omitted).

> brother helps me. My brother gets paid roughly the same amount so if you take the total my father got paid from June 9, 2020[,] to December 31, 2020[,] and multiply it by three, you will get what I am claiming to date for loss of income.

(Doc. 53-3, at 2.)

Plaintiff extrapolates the annual amount of substitute labor expenses from the six months of payments he alleges made to his father in the sum of $39,375.03 x 2 = $78,750.06 per year or $157,500.12 for the two years after his father passed away at the time of the pretrial conference. (Doc. 49, at 12; Doc. 53-3, at 2.)

In Plaintiff's supplemental interrogatory responses, he claimed damages for substitute labor in 2021 in the amount of $62,744.03. (Doc. 53-4, at 3.) Plaintiff no longer lists this amount as damages, but rather, in the Pretrial Order lists as $157,500.12 for the category of "Lost Wages/Reimbursement" under economic damages to date. (Doc. 49, p. 12.) Plaintiff claims $1,968,751.50 for future lost wages/reimbursement. (*Id*.) The latter amount encompasses Plaintiff's claim that he will continue to experience annual substitute labor costs of $78,750 for the next twenty-five years ($1,968,751.50).

Plaintiff has not made payments to anyone for substitute labor since November 21, 2021. That stated, his uncontroverted testimony is that he needs help, has received help, and owes monetary payment his brother Bryan Feight for the help he has been receiving.

5

Plaintiff estimated that in the 5 years leading up to the accident, he made approximately $25,000 per year. According to his tax returns, Plaintiff's had a net farming loss of $18,199 in 2014 and a net loss of $10,979 in 2015. He had net profits of $8,493 in 2016, $7,951 in 2017, $16,352 in 2018, $23,648 in 2019, $39,622 in 2020, and $6,169 in 2021. Thus, Plaintiff's total net income from his farming operation for 2014 through 2019 was $27,266, resulting in an average annual net income of $4,544. Looking at only 2020 and 2021, Plaintiff's average annual net income was $22,896.

Plaintiff is expected to live approximately 38 more years. (PIK Civil 4th, 171.45, Mortality Table.) From the time of the wreck in 2020 until Plaintiff reaches the age of 65 is approximately 27 years.

The next set of facts were gleaned from Plaintiff's response brief. Although Defendant has attempted to controvert the same, they are taken in the light most favorable to Plaintiff. *Janny*, 8 F.4th at 899 (citation omitted).

Plaintiff has not had the financial means to pay his brother Bryan Feight for all of the work that he has performed and continues to perform for Plaintiff since the accident. Bryan Feight is not available to replace 100% of the farming and ranching assistance that Plaintiff received from his father after the wreck. Plaintiff will, therefore, need to find additional paid help and estimates he will need to pay that person at least $1,500 per month.

In May or June of 2022, Plaintiff and Bryan Feight reached an agreement that once Plaintiff can afford to do so, he will pay Bryan Feight $25,000 a year for help on the farm. This agreement provided that Plaintiff's obligation to pay Bryan Feight for assistance began in January 2022 and will continue as long as Plaintiff needs the assistance.

Plaintiff's position is that farming and ranching are all he knows how to do. He states he wants to continue his family's tradition of farming and ranching on their family property. Plaintiff has not, however, been released to work by his personal physician.

This final portion of uncontroverted facts are from Defendant's reply brief. Since the accident, the number of acres Plaintiff owns has increased by 637 acres for a total of 777 acres. Before the accident, Plaintiff farmed (for himself and other landowners) 1,057 acres. After the accident, Plaintiff farms farmed a total of 1,424 acres.

## LEGAL ANALYSIS

### I. Legal Standard for Summary Judgment.

The rules applicable to summary judgment are well-established and are only briefly outlined here. Federal Rule of Civil Procedure 56(c) directs the entry of summary judgment in favor of a party who "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law." Fed.R.Civ.P. 56(c). A fact is "material" when it is essential to the claim, and issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor. ***Haynes v. Level 3 Commc'ns, LLC***, 456 F.3d 1215, 1219 (10th Cir. 2006).

When presented with a motion for summary judgment, the Court must decide "whether there is the need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." ***Anderson v. Liberty Lobby, Inc.***, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). If so, the Court cannot grant summary judgment. ***Prenalta Corp. v. Colo. Interstate Gas Co.***, 944 F.2d 677, 684 (10th Cir. 1991).

The initial burden of proof rests with the movant, who must show the lack of evidence on an essential element of the claim. ***Thom v. Bristol-Myers Squibb Co.***, 353 F.3d 848, 851 (10th Cir. 2003) (citing ***Celotex Corp. v. Catrett***, 477 U.S. 317, 322-23, 325 (1986)). If the initial burden is carried by the movant, the responding may not simply rest on its pleading but must instead set forth specific facts that would be admissible in the event of trial from which a rational trier of fact could find for the nonmovant. *Id*. (citing Fed.R.Civ.P. 56(e).)

Such facts must be clearly identified through affidavits, deposition transcripts, or incorporated exhibits; conclusory allegations alone will not survive a

motion for summary judgment. *Mitchell v. City of Moore*, 218 F.3d 1190, 1197 (10th Cir. 2000) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998)). All evidence and reasonable inferences will be viewed by the Court in the light most favorable to the party opposing summary judgment. *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004). The Court will not "evaluate the credibility of witnesses in deciding a motion for summary judgment." *Seamons v. Snow*, 206 F.3d 1021, 1026 (10th Cir.2000); *Zia Trust Co. ex rel. Causey v. Montoya*, 597 F.3d 1150, n.2 (10th Cir. 2010).

**II.     Plaintiff's Category and Calculation of Damages.**

    **A.     Economic Damages Generally.**

As discussed in the factual statement, *supra*, Plaintiff brings a cause of action for negligence resulting from an automobile accident. (*See generally* Doc. 1.) "In every negligence action, a plaintiff must prove (1) the existence of a duty; (2) breach of that duty; (3) injury; and (4) a causal connection between the duty breached and the injury suffered." *Long Motor Corp. v. SM & P Util. Res., Inc.*, 214 P.3d 707, *1 (Table) (citing *Honeycutt v. City of Wichita*, 251 Kan. 451, 836 P.2d 1128, 1136 (1992).

"The purpose of awarding damages is to make a party whole by restoring that party to the position he or she was in prior to the injury." *Ceretti v. Flint Hills Rural Elec. Co-op Ass'n*, 251 Kan. 347, 837 P.2d 330, 341 (1992). *See also* **State**

*ex rel. Stephan v. Wolfenbarger and McCully, P.A.*, 236 Kan. 183, 690 P.2d 380, Syl. 4 (1984).  Economic damages can include "lost wages, loss of earning capacity, and other such losses." *Id*. (discussing damages in the context of a personal injury tort claim).

### B.     Damages at Issue.

The issue before the Court relates to a category of Plaintiff's claimed damages resulting from his injuries.  In its Motion for Partial Summary Judgment, Defendant contends that Plaintiff does not claim decreased income as an element of damages, but rather Plaintiff merely makes a claim for an increase in his business expenses.  (Doc. 53, at 2.)  Defendant argues that these damages are improper because "[t]he uncontroverted facts show that Plaintiff has not incurred substitute labor costs since 2021 and that Plaintiff's overall income has not decreased after this accident as a result of the alleged increased labor costs." (*Id*., at 2, 13-14.)

Plaintiff counters that he has paid and/or agreed to pay others for labor that he was able to do himself before the accident, which he argues "are the best estimate of the monetary value of his diminished earning capacity." (Doc. 55, at 3.)  Plaintiff continues that a determination of the appropriateness of this damage estimate "is a material fact issue to be determined by the jury, based largely on the credibility of testimony and evidence presented at trial." (*Id*.)

### C. Reasonable Calculation of Damages.

"Damages cannot be awarded when they are too conjectural and speculative to form a sound basis for measurement." ***Johnson v. Baker***, 11 Kan.App.2d 274, 719 P.2d 752, 755 (1986) (citation omitted). Rather, allowable damages are those that may be "proven with reasonable certainty … ." ***Kelley Metal Trading Company v. Al-Jon/United, Inc.***, 877 F.Supp. 1478, 1484-85 (D. Kan. 1995) (citing ***Vickers v. Wichita State University***, 213 Kan. 614, 518 P.2d 512, 515 (1974)). *See also* ***Billups v. American Sur. Co.***, 173 Kan. 646, 649 (1952) (citing 25 *C.J.S.*, *Damages*, § 44, page 523) (stating that "there may be recovery for loss of profits consequent upon tort if they are such as may naturally be expected to follow from the wrongful act and if they are certain, but there may be no recovery where the profits are uncertain, speculative or remote … ."). Further, "in a negligence action, recovery may be had only where there is evidence showing with reasonable certainty the damage was sustained as a result of the complained-of negligence." ***Morris v. Francisco***, 238 Kan. 71, 708 P.2d 498, 503 (1985).

The District of Kansas consistently recognizes that, to recover for an economic loss, the claimant must "furnish the best available proof as to the amount of loss that the particular situation warrants." ***Petroleum Energy, Inc. v. Mid-America Petroleum, Inc.***, 775 F.Supp. 1420, 1426 (D. Kan. 1991) (so concluding in the context of a claim for lost profits) (citing ***Vickers***, 518 P.2d at 515-517). On

11

the other hand, "absolute certainty is not required in establishing damages." *Johnson*, 719 P.2d at 755 (citations omitted). "It is the responsibility of a district court to see that speculative and problematic evidence does not reach a jury." *Vickers*, 518 P.2d at 517.

### D. Plaintiff's Alleged Increased Expenses.

Defendant argues that Plaintiff's farming operation had minimal profits before the accident at issue and the profits actually increased after the accident. (Doc. 53, at 12.) According to Defendant, "[t]his would negate any claim for lost profits." (*Id.*, at 13.) Defendant continues by arguing that Plaintiff

> he ignores the profit numbers and instead tries to recover a separate category of his business expenses. Those expenses could be relevant if they decreased his overall net profit. But clearly, they have not done so. Plaintiff claims substitute labor of $78,750.66; this sum is over 17 times greater than his pre-accident profit. This court should not permit this claim for $78,750.66 per year to proceed when there is no allegation or showing those alleged increased expenses have had any impact on plaintiff's net profit.

(*Id.*)

Defendant points out that a portion of Plaintiff's damages is $39,375.03, which constitutes payments Plaintiff made to his father for performing substitute labor for Plaintiff from June 9, 2020, until December 9, 2020. (Doc. 53, at 13.) Defendant does not seek summary judgment as to payments during this six-month period. (Doc. 53, at 13.) As discussed below, however, Plaintiff appears to use

12

this amount as a calculation of his substitute labor payments for each subsequent six-month period since the end of 2020. Defendant requests summary judgment on any such claims "for substitute labor from January 1, 2021 to the present date" – alleged expenses incurred after the death of Plaintiff's father. (*Id*.)

Defendant notes that at the time of the Pretrial Hearing in December 2022, approximately four such subsequent six-month periods had elapsed, which equates to $157,500.12 ($39,375.03 x 4 time periods). (*Id*.) Defendant indicates that Plaintiff "alleges this exact amount in the section of the Pretrial Order called 'to date' Lost Wage/Reimbursement damages." (*Id*.) According to Defendant, Plaintiff is calculating "all his economic damages, past and present, based on what he allegedly paid his father for the six months after the date of the accident, actual records, be darned." (*Id*., at 13-14.)

Defendant continues, however, that Plaintiff "has not actually incurred those expenses." (*Id*., at 14.) Rather, according to Defendant, Plaintiff

> previously alleged he had actual expenses in 2021 of $62,774.03. In his deposition, however, he admitted several of the payments included in that sum were not for substitute labor. (A payment to his father of $15,000 was for his share of a cattle sale and $8,400 was for rental of a combine to cut his wheat with a combine he liked to use.) Plaintiff then, as described above, proceeded in the Pretrial Order to abandon all claims of actual expenses paid in 2021. Instead, he simply alleges the extrapolation or multiplier of the amounts paid to his father in the second half of 2020.

> The problem with his legal claim is that plaintiff has no proof of actual payments of that $39,000+ in 2021 and beyond. In reality, the facts show the contrary. His tax returns provide a specific line item (Form 1040, Schedule F, line 22) for him to list 'Labor hired.' Plaintiff admits he has never paid any sums for such "Labor hired" from 2014 to the present date. His tax returns in 2020 and 2021, the years after his accident, when he claims to have suffered the need for labor and in which he paid actual sums to his father and others, have open blanks for this line item. Next, in plaintiff's deposition at page 91 to 92, he specifically admits he 'has not paid anybody' for labor since November 21, 2021.

(*Id.*)

Plaintiff responds that the only way to make him whole is to "have his family farm and ranch operations continue as if no collision occurred." (Doc. 55, at 10.) Plaintiff asserts that reasonable certainty has been established as to the category of increased expenses damages because his "agreement to pay Bryan Feight and [Plaintiff's] estimate of minimum payments he anticipates making to another laborer also provides a reasonable basis for calculating an estimate of future losses." (*Id.*) Plaintiff continues:

> Here, the cost of substitute labor for the work [Plaintiff] could do for himself prior to the wreck is a reasonable yardstick by which to measure his pecuniary loss. To make [him] whole – to restore him to the position he was in prior to the injury – means to have his family farm and ranch operations continue as if no collision occurred. [His] severe injuries and limitations have caused the need for him to pay for help to continue his operations. He paid his father to help him until his father died in June 2021. Since then, his brother has been helping him and

14

> he has agreed to pay his brother for those services at a rate of $25,000 per year. Since his brother could not replace his father's efforts 100%, [Plaintiff] needs additional help that he estimates will cost at least $1,500, which means it could be significantly more. All of these past and ongoing costs are an economic measurement of his diminished earning capacity since the wreck. They form a reasonable basis for estimating his past and future losses.

(Doc. 55, at 10. )

He continues that Defendant's "overarching argument is that [Plaintiff] has to show ongoing substitute labor <u>payments</u> in order to submit a claim for future losses." (*Id*. (emphasis in original).) According to Plaintiff, the guidelines provided in ***Morris*** and ***Ceretti***, supra, do not support that conclusion. The Court agrees.

Plaintiff correctly relies on the case of ***Morris v. Francisco***, *supra*, for the proposition that there is no fixed rule for estimating the amount of damages to be recovered for loss. (Doc. 55, at 8-9 (citing 708 P.2d at 504) (holding that "'[t]here is no fixed rule for estimating the amount of damages to be recovered for loss or diminution of earning capacity'") (quoting 22 Am.Jur.2d, Damages § 93).) According to Plaintiff, the payments he made to his father before his father's death, his agreement to pay his brother, and his estimate of payments he will be required to make for additional labor provide a "'reasonable basis for computation which

will enable the trier of fact to arrive at an estimate of the amount of loss.'" (*Id.*, at 10 (quoting *Ceretti*, 837 P.2d at 341).)

The reasonableness of this calculation of damages – and the weighing of the evidence and manner of calculation presented – clearly encompasses questions of fact for the jury. Summary judgment is, therefore, not appropriate as to the issue presented. Defendant's Partial Motion for Summary Judgment (Doc. 52) is **DENIED**.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Partial Summary Judgment (Doc. 52) is **DENIED**.

IT IS SO ORDERED.

Dated at Wichita, Kansas, on this 29th day of March, 2023.

> S/ KENNETH G. GALE
> KENNETH G. GALE
> United States Magistrate Judge